Annette Guyer, Ex'x. *et al.*

*v.*

John H. Wilson *et al.*

*Filed at Ottawa October 31, 1891.*

1. APPEAL—*when must be prayed.* A party, to avail himself of the right of appeal, must pray for his appeal, and have the same allowed at the term at which the judgment or decree appealed from was rendered, and if this is not done the right to an appeal is gone, and one subsequently perfected gives the Appellate Court no jurisdiction to review or vacate the judgment or decree.

2. SAME—*what brought up for review—of matters subsequent to the term.* Where a bill was dismissed on a hearing as to a part of the defendants, the court, at a subsequent term, repeated its former order of dismissal, from which order the complainant appealed to the Appellate Court, where the decree of dismissal was reversed by default: *Held,* that the appeal did not bring up for review the first order of dismissal, and that the Appellate Court had no jurisdiction to review such order.

3. After a final order dismissing a bill as to certain defendants, which is not appealed from, the court will lose its jurisdiction of their persons, and a decree at a subsequent term repeating the order of dismissal will be a nullity. After dismissal, the court is powerless, at a subsequent term, to enter any order affecting the rights of the defendants so discharged by the court.

4. PARTIES—*to bill to reach special devise.* On bill to reach a special fund which has been devised by a testator, the executrix of the will is a necessary party, as well as the legatees, for the reason that the latter

may or may not be entitled to a portion of such fund on final distribution of the estate. And when the bill is dismissed by the court as to the executrix, it is impossible for the court to deal with the fund as against the legatees alone.

Writ of Error to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. John J. Glenn, Judge, presiding.

Messrs. Miller, Starr & Leman, and Mr. E. H. Guyer, for the plaintiffs in error:

The appeal to the Appellate Court was irregularly taken. The trial court pursued the proper practice in dismissing the Guyers out of the case by a separate decree. *Gage* v. *Rohrbach*, 56 Ill. 262; *Munger* v. *Jacobson*, 99 id. 349; *Castleman* v. *Jones*, 4 J. J. Marsh. 5.

Necessary parties were omitted from the case presented to the Appellate Court, and so from the final decree which it directs. The omission of these parties from the appeal rendered an affirmance of the decree of the circuit court necessary.

Messrs. G. W. & J. T. Kretzinger, Messrs. Sweeney & Walker, Mr. C. M. Osborne, and Mr. S. A. Lynde, for the defendants in error.

Mr. Justice Bailey delivered the opinion of the Court:

On the 10th day of December, 1877, the Rock Island Paper Company, being indebted to John H. Wilson in the sum of $10,000 for money loaned and advanced, and to be loaned and advanced, executed to said Wilson its ten promissory notes for $1000 each, bearing date that day and maturing five years after date, and bearing interest at the rate of ten per cent per annum, and to secure said notes, executed to Thomas J. Robinson, as trustee, its deed of trust upon its real estate, including its buildings, machinery, fixtures, etc. On

the 3d day of July, 1878, said Wilson loaned to said company the further sum of $5000, to secure which said company executed to Charles H. Walker, as trustee, its five coupon bonds for $1000 each, bearing interest at the rate of ten per cent per annum and maturing five years after date, and also a second deed of trust on the same property. Both of said deeds of trust contained a covenant on the part of the grantor to keep the premises thereby conveyed insured in one or more responsible insurance companies in an amount sufficient to secure the indebtedness therein mentioned, and also a covenant that the grantor would not do or cause to be done anything whereby the value of the premises thereby conveyed should be in any manner impeached or affected, and the lien thereby created charged or incumbered. Shortly after the execution of the first deed of trust, said company took out insurance policies on said property aggregating $10,000, and had inserted therein a clause making the loss, if any, payable to the trustee named in said deed of trust, and shortly after the execution of the second deed of trust, it in like manner took out policies of insurance aggregating $5000, with a clause making the loss payable to the trustee in that deed. Said insurance was kept in force by renewals until March 9, 1883, at which date the premises insured were destroyed by fire.

Sometime after said trust deed had been executed and placed on record and said $15,000 of insurance for the benefit of Wilson had been procured, said paper company became embarrassed and various judgments were recovered against it, and thereupon said company requested Samuel S. Guyer to advance the sum of $5000 and buy in and hold said judgments, agreeing to procure and deliver to him as security for his advances policies of insurance upon its said property to the amount of $5000, said insurance policies to be so drawn as to be payable to him in case of loss as his interest might appear. Guyer thereupon advanced said sum of money and took up said judgments, and said company procured and de-

livered to him policies of insurance, which were additional to those obtained for the benefit of Wilson, amounting to $5000.

Shortly afterward said company took out $5000 of insurance on the same property for the benefit of Stephen A. Main and $2500 for the benefit of Mitchell & Lynde, thus making the aggregate of the insurance on said property $27,500. These policies were all kept in force down to the time of the fire, and shortly before the fire took place, said paper company procured $5000 additional insurance, on said property payable to Holmes Hakes, its president, and $2500 payable to George M. D. Hakes, a stockholder and director, thus making the total insurance in force at the time of the fire $37,000. Each of said policies, including those procured for the benefit of Wilson, contained a clause permitting other insurance, and providing that, in case of loss, each company should be liable only for its pro rata share of such loss.

After the fire an appraisement was had by appraisers appointed by the several insurance companies and the paper company, by which the total loss was fixed at $20,063.54, and the total insurable value of the property at $31,900. Upon the basis of said appraisement, the amount payable upon Wilson's policies, under the pro rata clause, was only $9070.52. Wilson, after the fire, had the premises upon which the buildings insured stood, sold under one of his deeds of trust, realizing from such sale the sum of $2785. The indebtedness secured by said deeds of trust not being thus satisfied, he brought the present bill to enforce an equitable lien upon the moneys payable under the other policies in favor of subsequent creditors. After the fire, the claim under the policies in favor of Holmes Hakes was assigned to William T. Riggs, and the claim under the policies in favor of George M. D. Hakes was assigned to Alexander Y. Bentley. Prior to the filing of said bill, Samuel S. Guyer died, leaving his last will and testament, by which he devised and bequeathed all his real and personal property to his widow, Annette Guyer,

and to his son and daughter, Edward H. Guyer and Annette Guyer, and appointed his said widow his executrix.

The original bill, which was filed July 28, 1883, made the paper company, the several insurance companies, Holmes Hakes, George M. D. Hakes, Riggs, Bentley, Main, Mitchell, Lynde, Annette Guyer, Edward H. Guyer and Annette Guyer personally and in her representative capacity, and certain other parties, defendants. The Guyers demurred to said bill and their demurrer was sustained. The bill was several times amended, and demurrers were filed to it in its amended form by the Guyers with like result. Holmes Hakes, George M. D. Hakes, Riggs, Bentley, and Main answered and filed their cross-bill, and the cause afterward came on for hearing on pleadings and proofs, and as a result of said hearing a decree was entered June 16, 1888. At such hearing the court found that upon the bill of complaint and the amendments thereto, the equities were with the defendants, except defendants Holmes Hakes and Riggs, and that upon the cross-bill the equities were with the complainants, except said Hakes and Riggs; that as to the policies of insurance in which the loss, if any, was made payable to said Hakes, Hakes was chargeable with actual notice of the covenants in Wilson's deeds of trust, and that he and his assignee were in no better position in relation thereto than was said paper company, and that said policies must be held to be issued in performance of said covenants, and for the benefit of Wilson, to the extent of the amount still remaining due to him.

It was thereupon ordered, adjudged and decreed, among other things, that as to said defendants Mitchell, Lynde, Edward H. Guyer and Annette Guyer, executrix, etc., the bill of complaint be dismissed at the complainant's costs; that the insurance companies whose policies were made payable to the last named defendants and who had not paid the losses under said policies to the receiver, pay the same to the parties severally entitled thereto by the terms of said policies, and that

upon making such payments, said insurance companies stand discharged as defendants herein; that the cause stand referred to a special master to take proof and report as to the amount of the complainant's deficit upon the policies issued for his benefit; also as to the amount of the paper company's indebtedness to him secured by said policies, and the portion of said deficit caused by the issuance of the policies where the loss was made payable to Holmes Hakes, and the amount due and payable under said policies, and under the policies made payable to George M. D. Hakes and to Main. From this decree no appeal was taken by any of the parties thereto.

The special master afterwards made his report, and on the 5th day of April, 1889, that being one of the days of the January term, 1889, of said court, the cause came on to be heard on said report and exceptions thereto, and a decree was entered finding that the insurance companies whose policies were made payable to Wilson, to Guyer, and to Mitchell & Lynde, had paid the amounts due under their policies and ordering that they be discharged as defendants; also finding the several amounts due from the other insurance companies and ordering them to pay the same to the receiver, and directing that, on making such payments, they be discharged as defendants; also decreeing that defendants Main, Mitchell & Lynde, and George M. D. Hakes or his assignee Bentley, were entitled to receive the moneys due upon the policies made payable to them respectively, and that Wilson was entitled to the moneys due on the policies payable to Holmes Hakes, amounting in all to $2998.32. Said decree repeated the order dismissing the bill as to Mitchell, Lynde, Edward H. Guyer and Annette Guyer, executrix, etc., and also ordered the bill dismissed at the complainant's costs as to defendants Annette Guyer, Main, George M. D. Hakes and Bentley. Wilson thereupon prayed for and perfected an appeal to the Appellate Court from that portion of the decree relating to the policies payable to defendants Main and George M. D. Hakes, and also from that por-

tion of the decree dismissing the bill as to the Guyers. Holmes Hakes and Riggs also appealed to the Appellate Court from so much of the decree as gave the moneys payable on the Holmes Hakes policies to Wilson.

No appearance was made in the Appellate Court by the Guyers, and it is claimed that they had no knowledge that such appeal had been taken or was pending. The Appellate Court, by its judgment, reversed the decree of the Circuit Court, and remanded the cause to that court with directions to dismiss the cross-bill at the costs of the complainant therein, and to ascertain the full amount due Wilson under his trust deeds, and that the face value of all the insurance policies taken out for Wilson's benefit and in force at the time of the fire be made good to him out of the proceeds of all the other policies, and that after he has been fully paid, whatever remains of the moneys realized from said policies be divided between the several claimants in proportion to their several interests.

We are of the opinion that the judgment of the Appellate Court, so far as it relates to Edward H. Guyer and Annette Guyer, executrix, etc., can not be sustained. By the decree of June 16, 1888, that being one of the days of the May term, 1888, of the Circuit Court, the bill was dismissed as to them. This, so far at least as they were concerned, was a final decree, and they were no longer before the court or within its jurisdiction. The decree entered at a subsequent term repeating the order of dismissal was a mere nullity. These parties had already been discharged by the court and permitted to go without day, and the court was powerless at a subsequent term to enter any order affecting their rights or of which they were bound to take notice. If the complainant desired to have the decree dismissing the bill as to them reviewed on appeal, he should have appealed from such decree when first entered and within the time prescribed by the statute for taking appeals in such cases. The repetition of the order after the

court had lost jurisdiction of the persons. of said defendants could not have the effect of prolonging or extending the right to appeal.

The right to have a judgment or decree of the Circuit Court reviewed by the Appellate Court on appeal is purely statutory, and section 67 of the Practice Act by which the right is given provides, that appeals may be taken to the Appellate Court from all final judgments, orders and decrees of the Circuit Courts, (with certain exceptions), "provided such appeals shall be prayed for and allowed at the term at which the judgment, order or decree was rendered." This statute is too plain to admit of construction. A party to avail himself of the right of appeal must pray for his appeal and have the same allowed at the term at which the judgment or decree appealed from was rendered, and if that is not done the right to an appeal is gone and an appeal subsequently perfected gives the Appellate Court no jurisdiction to review or vacate the judgment or decree.

In *National Ins. Co.* v. *Chamber of. Commerce,* 69 Ill. 22, it was held that where a judgment is rendered by default and a motion is made at the same term to set aside the judgment and default and allow a defense to be put in, and the motion is continued to a succeeding term and then overruled, an appeal from the order denying the motion will not bring in question the propriety of the judgment entered at the preceding term, but only the order overruling the motion. Here the appeal was from the order of May 5, 1889, and if the judgment of the Appellate Court had been limited to a reversal of that order on the ground that it was entered improvidently and without jurisdiction of the persons of the parties thus attempted to be dismissed out of court, no fault could have been found with it. But the judgment of the Appellate Court went further and, in effect, set aside the decree entered at a former term and from which no appeal had been taken, so as to bring again into court the parties dismissed by that decree and

subject their property rights to further litigation. This was clearly erroneous. As the Guyers did not appear in the Appellate Court, the peculiar state of the record in this respect, as we may presume, was not called to the attention of that tribunal, but that fact constitutes no obstacle to the right of the Guyers to assign for error here the judgment so entered.

It should be noticed, however, that Annette Guyer, the daughter and one of the general legatees of Samuel S. Guyer, though a defendant to the bill, was not dismissed out of court by the decree of June 16, 1888, but was so dismissed by the subsequent order of April 5, 1889. That decree however found the equities of the bill to be with those defendants, of whom she was one, and ordered the moneys due under the Guyer policies to be paid by the insurance companies to the Guyers. This would seem to be also a final adjudication as to her rights. If, however, this were not so and it were shown that she had independent rights to the fund arising from the insurance policies payable to her father which could be litigated and determined against her in the absence of the executrix, it would be our duty to consider this appeal upon the merits so far as her rights are concerned. But such is not the case. The contrary not being shown, it will be presumed that the title to said fund is vested by the will in the executrix, and the bill being dismissed as to the executrix, it is impossible to deal with the fund in a suit against the legatee alone, as she may or may not be entitled to a portion of said fund on final distribution. The judgment of the Appellate Court must then be held to be erroneous as to Annette Guyer, the daughter, also.

The record is brought to this court by writ of error to the Appellate Court, the Guyers alone being plaintiffs in error. No errors are assigned by any of the other parties to the record. As to the Guyers the judgment of the Appellate Court will be reversed and the cause will be remanded to the Circuit Court.                    *Judgment reversed.*